[Crim. No. 12408. In Bank. Mar. 17, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM
HOWARD, Defendant and Appellant.

620

Robert N. Chargin, Public Defender, Frank A. Grande and Ann M. Chargin, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Roger E. Venturi, Jon A. Schoenberger, Daniel J. Kremer and Edward A. Hinz, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

BURKE, J.—On this appeal from a nonjury municipal court conviction of seven misdemeanor violations[1] of Penal Code section 484b, we have determined that contrary to defendant's contentions the statute is not subject to constitutional infirmities, and that the evidence supports the conviction. Accordingly, the judgment will be affirmed.

Penal Code section 484b was enacted in 1965.[2] It

---

[1]Defendant appealed to the Appellate Department of the San Joaquin Superior Court, which affirmed the judgment and then certified the appeal to the Court of Appeal under Penal Code section 1471 and rule 62, California Rules of Court. After decision by the Court of Appeal, this court granted a hearing.

[2]Section 484b: ''Any person who receives money for the purpose of obtaining or paying for services, labor, materials or equipment and willfully fails to apply such money for such purpose by either willfully

appears to be directed generally at persons in the construction and building improvement field who fail to use construction funds for the payment of laborers and materialmen on the project.

The prosecution evidence disclosed a substantially repeated pattern with respect to the seven individual transactions here involved. Defendant contracted for the performance of home improvement jobs, at times as the sales representative of a contractor, at other times for a corporation he had organized himself. The individual projects ranged in price from $1,852 to $6,680. The homeowners made down payments and progress payments to defendant, which he placed in the general bank accounts of the contractor or of the corporation, as the case might be. The jobs came to a halt before completion, and the owners faced unpaid construction bills and completion costs which substantially exceeded the unpaid contract balances. In most cases unpaid suppliers had filed liens against the properties by the time defendant came to trial. Additional liens were threatened. Although defendant had used some of the project payments for project costs, the evidence established that he and an associate had a practice of anticipating expected profits and of paying themselves commissions and "supervision" fees, thus stripping their venture of funds to complete the projects.

Defendant contends that section 484b is unconstitutionally vague and also offends the constitutional ban on imprisonment for debt. He further claims that his conviction was based on insufficient evidence.

1. *Constitutional Prohibition Against Imprisonment for Debt.*

Defendant cites *People* v. *Holder* (1921) 53 Cal.App. 45 [199 P. 832], which held that as applied to the defendant contractor there involved certain provisions of section 506 of the Penal Code,[3] which are somewhat similar to section 484b,

failing to complete the improvements for which funds were provided or willfully failing to pay for services, labor, materials or equipment provided incident to such construction, and wrongfully diverts the funds to a use other than that for which the funds were received, shall be guilty of a public offense and punishable by [fine, incarceration, or both] . . . . To constitute a diversion within the meaning of this section, the diversion must result in a reduction of the value of the owner's equity in his property or a reduction in the value of the security for the loan which provided such construction funds.''

[3]Section 506 in pertinent part: ''. . . any contractor who appropriates money paid to him for any use or purpose, other than for that which he

violated section 15 of article I of the California Constitution, which prohibits imprisonment for debt except in cases of fraud.[4] However, the statute considered in *Holder* differed in at least two material respects from section 484b: first, wilfulness was not an element of the crime and, second, no showing was required of injury to the persons who provided the diverted funds.

As noted in *In re Trombley* (1948) 31 Cal.2d 801, 804 [1] [193 P.2d 734], it has been held that the constitutional prohibition against imprisonment for debt applies in a criminal proceeding where legislation under which the accused is charged constitutes an attempt to make the mere act of failing to pay a debt a crime. However, the constitutional prohibition is expressly subject to the exception ''unless in case of fraud.''

*Trombley* held that the provision of section 216 of the Labor Code that ''any person . . . is guilty of a misdemeanor, who: (a) Having the ability to pay, wilfully refuses to pay wages due and payable when demanded,'' did not violate the constitutional ban on imprisonment for debt. The opinion points out (pp. 807-808 [4, 5] of 31 Cal.2d) that the word ''wilfully'' as used in criminal statutes implies a purpose or willingness to commit the act (Pen. Code, § 7, subd. 1), and although it does not require an evil intent it implies that the person knows what he is doing, intends to do what he is doing, and is a free agent. Thus subdivision (a) of Labor Code section 216, construed together with the Penal Code definition of the word ''wilful,'' makes it a crime for an employer having the ability to pay, knowingly and intentionally to refuse to pay wages which he knows are due; in *Davis v. Morris* (1940) 37 Cal.App.2d 269 [99 P.2d 345], a similar construction was placed on section 203 of the Labor Code which imposes penalties if an employer ''wilfully fails to

received it, is guilty of embezzlement, and the payment of laborers and materialmen for work performed or material furnished in the performance of any contract is hereby declared to be the use and purpose to which the contract price of such contract, or any part thereof, received by the contractor shall be applied.''

In *Holder*, the contractor had received part of the agreed contract price for construction of a house, but instead of expending the money for labor and materials he appropriated to other uses amounts which the prosecution claimed should have gone for those purposes. (P. 47 of 53 Cal.App.)

[4]Section 15 of article I of the California Constitution: ''No person shall be imprisoned for debt in any civil action, on mesne or final process, unless in cases of fraud, nor in civil actions for torts, except in cases of wilful injury to person or property . . . .''

pay . . . wages of an employee who is discharged or who quits,'' although it was recognized that a dispute in good faith as to whether any wages were due would be a defense to an action for such penalties. With respect to the provision which excepts ''cases of fraud'' from the prohibition against imprisonment for debt, *Trombley* notes (pp. 809-810 [6] of 31 Cal.2d) that the historical background of section 15 of article I and similar constitutional guaranties of other states clearly shows that the provisions were adopted to protect the poor but honest debtor who is unable to pay his debts, and were not intended to shield a dishonest man who takes an unconscionable advantage of another; that it has long been recognized that wages are not ordinary debts, that they may be preferred over other claims, and that, because of the economic position of the average worker and particularly his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay when it is due. Accordingly, an employer who knows that wages are due, has ability to pay them, and still refuses to pay them, acts against good morals and fair dealing, necessarily intentionally does an act which prejudices the rights of his employee, and thereby falls within the ''case of fraud'' exception to the constitutional prohibition and may be punished by statute.

Similarly in the present case, under Penal Code section 484b it must be shown that there was a wilful failure to complete improvements or to pay labor and materialmen, that the funds received for that purpose were diverted with resultant harm to the homeowner or to the lender who provided the funds. It clearly appears that a contractor guilty of such conduct has also acted against good morals and fair dealing, that his conduct has necessarily prejudiced the rights of homeowners and of those who may have provided financing, and that his acts likewise constitute a ''case of fraud'' within the exception to the constitutional ban on imprisonment for debt. In *Daugherty* v. *State* (1965) 216 Tenn. 666 [393 S.W.2d 739, 741] (see also cases cited at p. 743 [6] [393 S.W.2d]), the court in upholding a statute similar to section 484b declared that the legislative purpose of the statute was to punish for a fraudulent conversion and not for failure to comply with a contractual obligation. The same purpose would appear in the provisions of section 484b.

2. *Constitutional Challenge for Vagueness.*

Defendant contends that the last sentence of section

484b, which defines an element of the crime, is so vague that it does not meet the standards of definiteness required of a criminal statute by the due process clause of the Fourteenth Amendment to the Constitution of the United States.

The test to be applied to this question is that ''A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language. ■ As stated in *Pacific Coast Dairy* v. *Police Court,* 214 Cal. 668, at page 676 [8 P.2d 140, 80 A.L.R. 1217], 'Mere difficulty in ascertaining its meaning, or the fact that it is susceptible of different interpretations will not render it nugatory. Doubts as to its construction will not justify us in disregarding it.' '' (*Lockheed Aircraft Corp.* v. *Superior Court* (1946) 28 Cal.2d 481, 484 [171 P.2d 21, 166 A.L.R. 701] ; see also *People* v. *McCaughan* (1957) 49 Cal.2d 409, 414 [317 P.2d 974], and cases there cited.)

The challenged last sentence of section 484b specifies that to constitute the wrongful diversion of funds which is an essential element of the crime, the diversion must result in a ''reduction of the value of the owner's equity in his property or a reduction in the value of the security for the loan which provided such construction funds.'' To show diversion here the prosecution relied upon the mechanics' or materialmen's liens filed or threatened. Defendant urges that it is uncertain at what point in time a lien may be said to exist so as to effect a reduction in the equity of an owner's property, that it ''might occur when a subcontractor acquires the right to a lien; at the time notice of intent to lien is delivered; at the time a lien is recorded with the County Recorder; or at the time the lien is sued out, proved valid, and foreclosed.'' Defendant argues that in this context a person could not determine the point at which his conduct becomes criminal.

■ It appears that by the inclusion of the last sentence of section 484b the Legislature intended to make a diversion of funds criminal only if it resulted in actual harm to the person who had provided the funds. The sentence thus sets up an additional safeguard for the accused, whose diversion is not criminal in the absence of such harm. If the section required the perfecting of a lien to the point of judgment, the time involved and the possibilities of settlement in the interim would appear to mean that a contractor could effectually forestall criminal prosecution under the section.

 We are persuaded that a logical, reasonable and practical construction of the statute is that a reduction in equity or in security is established upon a showing that there is a valid right to a lien by one who furnished services or materials to the job, whether or not the lien has been filed, whether it was filed before or after the criminal action, and whether or not the lien has gone to judgment and possible foreclosure. So interpreted, the asserted uncertainty disappears, and the statute is given the effect seemingly intended by the Legislature and one which will help to protect the inexperienced from being victimized by fraudulent and irresponsible persons operating on the fringes of the legitimate construction industry.

### 3. *Sufficiency of Evidence.*

 Defendant contends that there is no evidence that he received money ''for the purpose'' of obtaining or paying for services, labor or materials on any particular construction job, within the meaning of section 484b. However, the improvement contracts here involved specified that the contractor was ''to furnish all'' materials and labor required to complete the projects, and called for installment payments by the owners as the work progressed. It would be unreasonable to require that an owner specifically request that his payments be earmarked to meet the costs incurred on his particular job before the contractor can be found in violation of the statute. The owner's intention and expectation that the money he paid be so used would appear implicit in the contracts. Although those knowledgeable and experienced in contracting for construction often provide for protective measures to insure that satisfactory evidence be given of the proper use of funds paid, before the next payment is made, laws are designed to protect the unsophisticated as well as those who can protect themselves.

Some ten years prior to the enactment of section 484b it had already been ruled that a contractor who violated the terms of a written agreement which expressly required application of progress payments to a particular project could be prosecuted for embezzlement under the grand theft statute. (*People* v. *Clemmons* (1955) 136 Cal.App.2d 529 [288 P.2d 1021].) It thus seems apparent that the Legislature intended by section 484b to broaden the scope of criminal liability by eliminating any requirement that a written or oral agreement expressly specify such application. A contrary holding would render

section 484b largely ineffective and would leave marginal promotional contractors free to perpetrate fraud on small homeowners, few of whom will be sufficiently knowledgeable to expressly limit the uses to which their payments may be lawfully applied. As already noted (*ante*, fn. 3), the provisions of the statute considered in *People* v. *Holder*, *supra*, 53 Cal. App. 45, differed from those of section 484b, and contrary to defendant's contention that case is not persuasive here. Section 484b does not turn upon a purpose declared by the Legislature to exist regardless of contract provisions, such as was considered in *Holder*, but instead upon the actual purpose, express or implied, of the payments received by the contractor.

Finally, there is no merit in defendant's contentions that evidence of ownership of the properties here involved was not presented and that there was no showing of the reduction of the equity of any particular owner. Each of the seven complaining witnesses testified as to his ownership, and each testified as to liens filed or threatened.

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.