[Crim. No. 10500. Third Dist. June 3, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT WORRELL, Defendant and Appellant.

## COUNSEL

Brunello & Cline, James L. Brunello and James S. Clark for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and Edmund D. McMurray, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

LALLY, J.*—Robert Worrell (hereafter defendant) was convicted by a jury of wrongful diversion of construction funds. (Pen. Code, § 484b.)

Defendant appeals his conviction and raises three issues: (1) admission of certain of his business checking account records was error for lack of foundation to meet the business records exception to the hearsay rule (Evid. Code, § 1271); (2) the copies so introduced violated the best evidence rule and did not fall within an exception thereto (Evid. Code, §§ 1500, 1503, 1550); and (3) there was insubstantial evidence to support the conviction.

### FACTS

Defendant was the president of S & R Properties and Ray Muller was the vice president during the times of the transactions which led to the present conviction. Both men also had some connection with Star Realty. Thelma Anderson (Dunlap) and her husband contacted Star

---

*Assigned by the Chairperson of the Judicial Council.

Realty for the purpose of purchasing property and having a house built thereon. They met with Muller who showed them a lot and a purchase contract was entered into for the lot and the construction of a three-bedroom, two-bath home. The Andersons gave Muller a $1,000 deposit at that time.

On September 17, 1977, Mrs. Anderson opened a joint checking account at Wells Fargo with Muller. The Andersons first met defendant at Star Realty after they had contracted for the lot and talked with him about making changes in the building plans.

Financing for the new home was obtained by the Andersons taking a loan on a house they owned in Swansboro. The loan was obtained from Tahoe Savings & Loan and was to be paid into an escrow for the new house set up at First American Title Company. First American disbursed a check to Thelma Dunlap (Mrs. Anderson) on October 12, 1977, for $29,671.47, which was picked up by defendant. That check was then deposited in the Wells Fargo joint account.

S & R Properties had its checking account with River City Bank. Defendant was in *control* of that checking account. Exhibits 10 and 11 were photostats of the microfiche account records admitted as business records of River City Bank, and they showed the S & R Properties account had a balance of $765 on October 11, 1977, and that on October 12 there was a deposit of $15,447.50 into that account which included a check for $12,160 from Wells Fargo. From October 12 through October 20, $24,246.47 worth of checks were written on the S & R account.

Defendant admitted when he testified that he had picked up the escrow check and had given it to Muller for deposit in the joint account. He further testified that he deposited the check for $12,160 in the River City account and wrote checks off that account to pay for S & R business expenses, whether related to the Anderson contract or not.

It then appears undisputed that work progressed on the property in November and December, and that all laborers and materialmen were paid by S & R for that work. The contract with the building manufacturer was entered into on November 7 and the building permit obtained December 7. There is some evidence that the $12,160 was to be the first progress payment on the construction contract. It is clear from the record that the payment was deposited in the S & R account and spent before the above work was begun on the property.

Defendant testified that he had purchased the subject lot from Dale Brown who was the holder of a first deed of trust for $7,000 when the Anderson contract was made. Respondent suggests that defendant admitted the contract addendum called for paying off the Brown deed of trust from the first progress payment. It had not been paid on or before October 20, 1977.

The contract was terminated by Mr. Anderson on March 3, 1978.

## DISCUSSION

### 1. *Is There Substantial Evidence to Support the Conviction as to Each of the Elements of Penal Code Section 484b?*

Penal Code section 484b provides: "Any person who receives money for the purpose of obtaining or paying for services, labor, materials or equipment and willfully fails to apply such money for such purpose by either willfully failing to complete the improvements for which funds were provided or willfully failing to pay for services, labor, materials or equipment provided incident to such construction, and wrongfully diverts the funds to a use other than that for which the funds were received, shall be guilty of a public offense. . ."

Prior to 1974 Penal Code section 484b contained an additional last sentence which read: "To constitute a diversion within the meaning of this section, the diversion must result in a reduction of the value of the owner's equity in his property or a reduction in the value of the security for the loan which provided such construction funds."

In 1969 the California Supreme Court affirmed the constitutionality of section 484b and interpreted it as requiring three basic elements before a violation existed. (*People* v. *Howard* (1969) 70 Cal.2d 618, 623 [75 Cal.Rptr. 761, 451 P.2d 401].) Defendant cites the case to establish that there must be: (1) a wilful failure to complete improvements or to pay labor and materialmen; (2) the funds received for that purpose were diverted, and (3) resultant harm to the homeowner or to the lender who provided the funds. (*Id.*, see generally, 78 A.L.R.3d 563.)

Defendant concedes that there was substantial evidence to support element two, diversion of the funds, if the contested evidence is admissible.

Element three, harm to the homeowner or lender, is derived in the *Howard* case from the last sentence of section 484b as it read when the case was decided. (*Id.*, at p. 624.) The subsequent amendment of Penal Code section 484b in 1974 eliminated any requirement for such harm. (*Review of Selected 1974 California Legislation, Crimes* (1975) 6 Pacific L.J. 258-259; Leg. Counsel's Dig. Deering's Cal. Code, Adv. Legis. Service 1974, ch. 910, p. 30.) Defendant suggests that *Howard* is still controlling on this issue but cites no authority for ignoring the obvious legislative intention in deleting the former last sentence of Penal Code section 484b.

■ Thus, defendant's major contention is that there is no substantial evidence to support a finding that he wilfully failed to complete improvements or to pay labor and materialmen. He points to his testimony that all work done in November and December was paid for. Respondent argues that the facts support the conviction and relies on the evidence that the money was diverted, not used for the Anderson job and no work was done until after the $12,160 had been spent by defendant. Respondent's interpretation is that diversion of the funds to purposes other than payment for improvements or labor and materials on the job for which the funds were obtained is a violation of Penal Code section 484b.

■ It appears necessary to interpret section 484b before determining whether there is substantial evidence to support defendant's conviction.

The question is whether there must be both a diversion and a wilful failure to pay for services or whether there must just be a diversion such that the specific funds diverted are not used to pay for the services.

The legislative purpose of Penal Code section 484b, as amended, is to prevent any possibility of homeowner harm resulting from the diversion of construction funds. The statute should be read as preventing the use of one construction project's funds for another project on the grounds that such use leaves open the possibility of harm to the homeowner if the business is short on cash and unable to complete the job at a later date. Such a purpose would be carried out if proof of diversion of funds obtained for a specific project is all that section 484b requires.

Thus, a person who receives funds for a designated purpose wilfully fails to use those funds for such purpose if he either (1) fails to com-

plete the improvements or (2) fails to pay the labor or materialmen. The two alternatives cover different fact situations. A contractor who fails to complete the improvements has probably not incurred liability to pay any laborers or materialmen for the improvements by virtue of the fact that they are either not started or incomplete. Likewise, the contractor that has completed has incurred the liability. The statute covers both cases if the contractor has received funds for either purpose and he diverts it to another use. Under this analysis, the contractor who receives an initial payment to cover certain improvements cannot divert the funds to another use and avoid criminal liability by not having started the construction. In other words, liability attaches when the contractor fails to either complete the improvements or pay the costs therefor with the money obtained for that purpose. ■ In this case, the statute required defendant to use the $12,160 "to complete the improvements for which [the] funds were provided" (those specified in the contract to constitute the first stage). Defendant's completion of the improvements at another time does not save him from the statute because he wilfully failed to apply "such money" (the $12,160) to complete the improvements for which that money was designated. The crime is not complete until there is a use of funds for another purpose, if ever.

■ The above statutory construction carries out the legislative intent. The statute thus prevents a contractor from finishing old jobs with new money which could lead to a homeowner not receiving his contracted for improvements after paying for them, if the contractor suddenly had no "new" money (customers). This construction also construes the statute as a whole with all the parts harmonized to carry out the intent. (1 Witkin, Cal.Crimes (1963) § 18, pp. 21-22.) Under this construction a violation of section 484b would be shown by a diversion of funds obtained for the purpose of construction before the completion of the designated improvements or the payment of laborers or materialmen.

■ On appeal we must review the evidence to determine whether a reasonable jury could have found defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 575-578 [162 Cal. Rptr. 431, 606 P.2d 738].) That determination is made by considering whether there is substantial evidence in support of the conclusions reached by the trier of fact.

■ Defendant here concedes that under this court's construction of section 484b there was sufficient evidence to support his conviction if exhibits 10 and 11 are admissible in evidence.

It is correctly noted by defendant that a conviction will be reversed where there is an error in the admission of evidence only where it is reasonably probable that a more favorable result would have resulted but for the error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Exhibits 10 and 11 established that on October 11 the closing balance in the S & R account was $765.70 and that on October 12 a check from the Wells Fargo joint checking account in the amount of $12,160 was deposited in the S & R account. The facts and circumstances of defendant's diversion of the $12,160 was adequately established by other evidence.

Defendant himself testified that he deposited the $12,160 check into the S & R account. He also testified that he used the money for general business purposes that were not related to the Anderson project. In addition, defendant's secretary-bookkeeper testified the S & R account always had a negative balance. Independent testimony established that the $29,000 escrow check was disbursed to defendant on October 12.

Mrs. Anderson testified that the $29,000 check was deposited in the Wells Fargo Bank and a $12,160 payment had been made from that account. Finally, exhibit 12 demonstrated that $24,246.47 in checks were written on the S & R account between October 12 and 20. An inference is certainly permissible that the $12,160 was spent during that period. Finally, no work was done on the Anderson project before November and, thus, the money must have been spent for other purposes. This evidence is sufficient to establish that defendant received money for construction purposes, that he wilfully failed to apply it to those purposes, and that he diverted it to other uses. Thus, it cannot be said that a more favorable result would have obtained had exhibits 10 and 11 been excluded. Thus, discussion of defendant's contentions as to their admissibility would serve no useful purpose.

The judgment is affirmed.

Puglia, P. J., and Paras, J., concurred.

A petition for a rehearing was denied June 30, 1980, and appellant's petition for a hearing by the Supreme Court was denied July 30, 1980. Mosk, J., was of the opinion that the petition should be granted.