Opinion
GILBERT, J.
William Heitz appeals from his conviction of violating Penal Code section 484b following a jury trial in the Justice Court for the *Supp. 12 Loomis Judicial District. We reverse the conviction, finding the evidence insufficient to support a conviction under Penal Code section 484b. As more fully discussed below, it is our determination that Penal Code section 484b is not applicable to the kind of routine business transaction disclosed by the evidence in this case.[1]
The Facts
The facts at the trial disclosed that defendant operated the Crown Neon Signs company (Crown), a corporation. The business was located in Olivehurst, Yuba County, California, and sold custom-made neon signs to business customers.
The complaint alleged a violation of Penal Code section 484b occurring between December 1979 and August 19, 1980. In December 1979, a Crown employee, Glenn Pope, contacted Sherry Donovan at her place of business, the Granite Bay Printing Company, in Granite Bay near Folsom Lake, Placer County. Pope successfully solicited Donovan’s purchase of a neon sign from Crown and, on December 14, 1979, Ms. Donovan signed a contract with Crown for the making and installation of a neon sign for Granite Bay Printing. She paid a deposit of $611.09 to Pope. Ms. Donovan was told that there would be a six-to-eight-week wait for delivery of the finished product. Donovan made contact with Crown in February of 1980, but received neither a refund of her money nor a completed sign.
In order to establish defendant’s wilfulness in handling the Donovan money, the district attorney presented testimony from several other individuals who signed contracts through Pope for the installation of signs by Crown. *Supp. 13 The pattern in each case was the same—a contract was signed and a deposit paid, but no product was ever delivered.
All of the money received from Donovan and the others was placed into the Crown operating bank account. The company used the money in the account to acquire and pay for supplies necessary to build signs. Eventually, however, the company’s obligations exceeded its cash on hand and the business came to a halt. These business problems were apparently ongoing and known to the defendant at the time the contracts were made with the Donovans and the others.[2] Eventually, in March of 1980, a petition for bankruptcy was filed by Heitz in the United States Bankruptcy Court for the Eastern District of California. Granite Bay Printing and the other businesses whose contracts for signs were part of the evidence at the trial were listed as creditors in those proceedings.
Discussion
The question of whether there is sufficient evidence to support defendant’s conviction calls upon us to decide if Penal Code section 484b applies to the kind of business transaction disclosed by the evidence at defendant’s trial. We hold that it does not.
Penal Code section 484b provides, in pertinent part, as follows: “Any person who receives money for the purpose of obtaining or paying for services, labor, materials or equipment and willfully fails to apply such money for such purpose by either willfully failing to complete the improvements for which funds were provided or willfully failing to pay for services, labor, materials or equipment provided incident to such construction, and willfully diverts the funds to a use other than that for which the funds were received, shall be guilty of a public offense . . . .”
By its terms, the section only applies where:
1. The nature of the transaction between payee and payor is such that there is an explicit or implicit dedication of the funds received for a particular purpose; and where,
*Supp. 14 2. the funds in question are to be used for “construction” or “improvements” as those terms are used in the section. These requirements flow from the language of the statute and are consistent with the legislative intent in enacting the statute.[3]
1. Section 484b Requires That the Funds Received Must Be Intended for a Specific, Dedicated Purpose.
Section 484b was a special theft statute enacted by the Legislature in 1965. In People v. Howard (1969) 70 Cal.2d 618 [75 Cal.Rptr. 761, 451 P.2d 401], the California Supreme Court noted that the section “appears to be directed generally at persons in the construction and building improvement field who fail to use construction funds for the payment of laborers and materialmen on the [construction] project.” (70 Cal.2d 618, 621.)
Prior to the enactment of the section, criminal prosecution for wrongful diversion of construction funds was difficult in the absence of a written agreement which required that construction progress payments received by a contractor be applied to a particular project. (People v. Clemmons (1955) 136 Cal.App.2d 529 [288 P.2d 1012].) Section 484b was intended to “broaden the scope of criminal liability by eliminating any requirement that a written or oral agreement expressly specify such [particular] application.” (Howard, supra, 70 Cal.2d at p. 625.) Thus, the Supreme Court in Howard reasoned that Penal Code section 484b protects small homeowners who would not ordinarily “be sufficiently knowledgeable to expressly limit the uses to which their payments may be lawfully applied.” (Howard, at p. 626, italics added.) The propriety of applying section 484b turns, therefore, “upon the actual purpose, expressed or implied, of the payments received.” {Ibid.) In its effect, the section prevents “the use of one construction projects’ funds for another project on the grounds that such use leaves open the possibility of harm to the homeowner *Supp. 15 if the business is short on cash and unable to complete the job at a later date.” (People v. Worrel (1980) 107 Cal.App.3d 50, 55 [165 Cal.Rptr. 459].)[4]
Section 484b contemplates several possible factual variations of the business transactions which give rise to its application. One situation is where money is received by one person, but is intended to be held by that person on behalf of others who actually complete the object of the transaction. Where the defendant then “willfully fails to apply such money for such purpose by . . . failing to pay for services, labor, materials or equipment provided . . .,” the statute applies. (See People v. Worrel, supra, 107 Cal.App.3d 50, 55-56.) In such a case, the statute protects the laborers and materialmen who actually perform the work and, of course, protects the ultimate consumer who might be subjected to financial liability to those actually performing due to a failure of payment by the person who received the homeowner’s funds.
The statute also contemplates those situations where the receiver of the funds is either to perform the work or provide the materials and equipment personally or where others are to perform the work, but the diversion of funds occurs before any liability to others is incurred. Hence, the language “ . . . willfully failing to complete the improvements” is in the alternative to “willfully . . . failing to pay.” (Worrell, ibid.) Even in this latter variation of the transaction, however, the “for the purpose” language of the statute presumes a dedication of funds in the first instance.[4]
[5]
The requirement of section 484b that the funds in question be received “for the purpose of obtaining or paying for services, labor, materials or equipment” implies a dedication of funds for a particular purpose on a particular job and, in some circumstances, a holding of the funds “in trust.” No such dedication or trust relationship appears here. The contracts contained no provisions dealing with the holding of the funds in trust or in any particular manner and there was no evidence of any supplemental oral
*Supp. 16 agreement concerning the use, holding or disbursal of the funds paid as deposits on the delivery of the signs.
While it is true that Crown ran out of money before completing the Granite Bay Printing sign, there is absolutely no evidence that the funds received from Sherry Donovan were dedicated to work on her particular sign. While section 484b does not require an express understanding of particular purpose, the kind of business transaction here, unlike the ordinary transaction for home construction or, for example, major remodeling, does not involve either an implicit or explicit understanding of dedicated purpose or a trust relationship for payment to others. To hold otherwise would expand the scope of section 484b to almost any transaction where funds were paid for the acquisition of services and goods even remotely related to “construction.” If found applicable to the acquisition of a neon sign, the section could likewise be applied not only to major home construction but also to simple sign painting, small, routine repair work by plumbers or other tradesmen, or, for that matter, to the planting of backyard posies by a part-time gardener. There is no implicit understanding in such routine business relationships beyond what actually occurred in this case—that the funds would be deposited in the company’s regular business account and paid out to meet the ongoing general expenses of the business to the extent possible.
We thus hold that there was insufficient evidence at trial that the funds paid by Sherry Donovan were paid under the circumstances specified in section 484b.[6]
2. The Funds in Question Must Relate to Construction or Construction Improvements.
Section 484b applies only where, inter alia, money is received and there is either a wilful failure to complete “the improvements for which funds were provided” or where there is a wilful failure to pay for the services, labor, materials or equipment provided “incident to such construction. ” The words “such construction” refer to the word “improvements” used earlier in the same sentence of the statute. The words “improvement” and “construction” are, therefore, used interchangeably in the statute to define the ultimate object for which the money is paid and received. Every word in a statute is intended to have a meaning and perform a function, Mahdavi v. Fair Employment Practice Com. (1977) 67 Cal.3d 326, 334 *Supp. 17 [136 Cal.Rptr. 421], and should be so construed. (J. R. Norton Co. v. Agricultural Labor Relations Bd. (1979) 26 Cal.3d 1, 36-37 [160 Cal.Rptr. 710, 603 P.2d 1306].)
As used in the statute, we believe that the words “construction” and “improvement” do not include the mere addition or provision of a fixture for attachment to the structure. The term “construction” is generally defined as the erection, remodeling or structural repairing of a building on land and generally does not include the mere addition of fixtures like signs. Where a word or phrase has a well-known and definite legal meaning, it should be so construed when used in a statute. (58 Cal.Jur.3d, Statutes, § 126, p. 519.) For example, the term “construction contract” has been so defined for a determination of sales tax liability and was distinguished from a “contract for the sale and installation of machinery or equipment” in City of San Joaquin v. State Board of Equalization (1970) 9 Cal.App.3d 365, 372 [88 Cal.Rptr. 12]. “Construction contract” was similarly defined in a similar taxing context in Hayward Bldg. Co. v. State Bd. of Equal. (1958) 164 Cal.App.2d 607 [330 P.2d 855].
This definition is also consistent with the statutory licensing scheme for various “contractors.” These statutes distinguish those who merely install varying sorts of removal fixtures from those “who engage in work upon structures or projects which are or are to become a part of the real property.” (Walker v. Thornsberry (1979) 97 Cal.App.3d 842, 846 [158 Cal.Rptr. 862],)[7]
 We need not decide, however, precisely what types of work are within the scope of the terms “construction” and “improvements,” for it is clear that provision of a neon sign is not the character of construction or improvement contemplated by section 484b.
This approach is consistent with the history and purpose of section 484b, discussed above. Moreover, this definition renders the use of the terms “construction” and “improvement” consistent with the dedicated purpose and “trust relationship” aspects of the balance of the statute. The “trust” aspects of the statutory language derive from the trust relationship implied in the receipt and disbursal of building construction funds by a contractor for construction, as we define that term here.
*Supp. 18 Accordingly, we find that the provision of a prefabricated neon sign, such as was to be delivered by the defendant in this case, does not constitute either construction or construction improvement within the meaning of Penal Code section 484b.
For these reasons, we find that there is insufficient evidence to support the conviction of defendant both because the neon sign to be furnished is not one of the objects or purposes defined by the statute and because the transaction involved in the contract for the signs did not involve either a dedicated purpose of the funds or an implicit trust relationship in the holding of the funds.
The judgment is reversed.
Couzens, P. J., and Gibson, J., concurred.

The pre- and post-trial history of the case and allegedly related events are rather colorful. After the defendant had allegedly received the money which he was charged with diverting, but before the filing of the criminal complaint against him, defendant initiated bankruptcy proceedings in the United States Bankruptcy Court for the Eastern District of California. Those proceedings were still pending when the criminal charges were filed. The bankruptcy court eventually enjoined the criminal proceedings against Heitz. The federal court also issued a removal order for a Yuba County small claims case which had, by then, been filed by some of the witnesses to the Placer County criminal action. Contempt proceedings in the bankruptcy court were later brought against the civil claimants/witnesses. The trial judge in the case before us on this appeal, Robert Young, appeared as a witness on behalf of the civil claimants at the federal contempt hearing. All of this came in the midst of the contested election involving Judge Young’s seat. To make matters worse, defendant’s bankruptcy attorney was allegedly associated with the campaign of one of Judge Young’s opponents.
Defendant alleged the prejudice of Judge Young under Code of Civil Procedure section 170, only to find the judge from the Yuba County small claims action, Judge Dawson, assigned to hear the disqualification proceedings.
Defendant claims error in Judge Dawson’s handling of the disqualification proceedings concerning Judge Young and himself. Due to our holding on the central issue in this appeal, we, fortunately, need not reach these issues.

Substantial evidence was introduced concerning certain financial transactions between Heitz and the church of which he was pastor in Olivehurst. The relevance of the evidence at trial appeared to be its bearing on the defendant’s “intent” when funds were received from the customers. It was apparently alleged that the defendant was making inappropriate transfers of property and funds to the church in order to make the financial status of Crown appear worse than it really was, thus justifying the bankruptcy proceedings and raising the possible inference that the defendant never intended to perform the signed contracts with the Donovans and others. In addition, defendant offered the testimony of several character witnesses and that of his bankruptcy attorney. Because of our holding, detailed discussion of this evidence is unnecessary.

The defendant was charged in the conjunctive with . . failing to complete the improvements and willfully failing to pay for services ....’’ See complaint filed with justice court (italics added). Such charging may have fatally increased the burden on the prosecution, as there was no evidence at the trial of a wilful failure to pay for services, etc., in addition to the alleged “failure to complete the improvements” (the signs). Any such issue is rendered moot by our holding herein.
In addition, the corporation was not charged (see Pen. Code § 1390 et seq.). The record is unclear as to the prosecution’s theory of the defendant’s personal criminal liability for the alleged acts in Placer County. Except for conversations at his home and business in Yuba County, there does not appear to be any evidence of the involvement of defendant William Heitz, Sr. Pope, the salesman who made the contracts and received the down payments, was charged as a codefendant but was not tried with the defendant. These issues, however, are not raised on this appeal.

As construed by the California courts, the statute is similar to other states’ statutes which are enacted to protect homeowners and materialmen. Almost universally, such statutes are construed as codifications of the implicit trust relationship established when a contractor receives construction funds which are specifically held for disbursal to laborers and materialmen on a particular job. (See Annot. (1977) 78 A.L.R.3d 563, and cases cited therein.)

Review of the available materials surrounding the enactment and signing of Senate Bill No. 722, containing the original version of section 484b, supports the conclusions reached here and in Howard, supra, 70 Cal.2d 618. For example, the author’s letter to the Governor (Sen. James Cobey to Gov. Edmond G. Brown, Sr., June 30, 1965) urging the signing of the bill and a similar letter to the Governor from the Attorney General (Charles Barrett, Asst. Atty. Gen. to Gov. Brown, July 6, 1965), all emphasize the law’s application to the misappropriation of construction loan funds by a builder and talk of the breach of trust inherent in the contractor’s misappropriation of those funds received for a specific purpose.

The prosecution’s theory appeared to be that defendant received the money for the signs under false pretenses, never intending to perform on his contractual obligations. We do not reach the question of whether a prosecution could have been maintained on these facts under Penal Code section 484 as opposed to section 484b, and there is no reason set forth in the record why prosecution was attempted under a special and not the general theft statute.

Defendant arrives at the same conclusion by focusing on the character of the defendant as not being a particular kind of “contractor” within the meaning of certain licensing provisions of the Business and Professions Code. While we agree with defendant’s final conclusion that the work here was not a “construction” or “improvement” as those terms are used in section 484b, analysis of the application of the statute must proceed from an analysis of the character of the work performed and not the character of the defendant as a “contractor.” Otherwise, the application of the section might depend upon the fortuitous circumstance of the alleged offender’s licensure status, rather than on the quality of the acts performed by the wrongdoer.