The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Edward Daniel COLLIE,
Defendant-Appellant.

No. 82CA0338.

Colorado Court of Appeals,
Div. I.

Nov. 17, 1983.

Rehearing Denied Dec. 29, 1983.

Certiorari Denied June 14, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., John Milton Hutchins, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Lyndy Ohneck, Deputy State Public Defender, Denver, for defendant-appellant.

METZGER, Judge.

Defendant appeals his jury conviction of theft of over $10,000, pursuant to § 18–4–401, C.R.S.1973 (1978 Repl.Vol. 8). We affirm.

Defendant was an independent construction and landscaping contractor. During the fall of 1978, through both newspaper ads as well as his promotional and sales representative, who later testified against him at trial, defendant solicited customers for landscaping and remodeling work. In October 1978 defendant entered into written contracts with five different Denver area homeowners for such work. He received initial payments from them totalling over $12,000, in the form of checks. All five projects were to be begun and completed in a matter of weeks. However, virtually no work was done on any of them, and in all cases the defendant failed to refund any of his customers' money upon request.

It was later discovered that during October and November 1978, all these monies had been deposited into, and then withdrawn from, a new local checking account which, by December 12, 1978, had been closed for insufficient funds. During that winter and the following spring, five homeowners unsuccessfully attempted to obtain either performance on the contract or refunds.

They then contacted the District Attorney's Consumer Fraud Office, which instituted the theft prosecution. Upon the jury conviction, the trial court, citing defendant's two prior theft convictions, as well as a lengthy arrest record for theft and short checks, imposed the maximum sentence, eight years, and ordered that restitution be paid to the five victims.

### I.

Defendant initially maintains that the prosecution was based not only on the general theft statute, § 18–4–401, C.R.S.1973 (1978 Repl.Vol. 8), which was charged in the information, but also on the subcontractor's lien statute, § 38–22–127, C.R.S.1973 (1982 Repl.Vol. 16A), which was not a part of the information. From this position flow three related contentions of error.

### A.

First defendant contends that there was, in effect, one criminal charge based on two statutes. He maintains that the prosecution had to prove the elements of both statutes for there to be any criminal liability. Defendant continues that, since the evidence adduced at trial related logically to the theft statute only, there was an overall insufficiency of evidence for the offense charged. We disagree.

Defendant misconstrues the operation of the subcontractor's lien statute. Its purpose is to protect homeowners, laborers, and materialmen from dishonest or profligate contractors by requiring all contractors to hold in trust their customers' advance payments received if any independent laborers or materialmen will be necessary to complete a particular job. *People v. Howard*, 70 Cal.2d 618, 75 Cal.Rptr. 761, 451 P.2d 401 (1969); *State v. Pierson*, 86 A.2d 559 (Del.1952); *see People v. Brand*, 43 Colo.App. 347, 608 P.2d 817 (1979); *see generally* Annot., 78 A.L.R.3d 563.

The lien statute is a strictly civil provision which cannot in itself serve as the basis for a criminal action. The state may choose to treat the actions of the contractor as a criminal matter, but any such prosecution must be charged and proved under the theft statute. *People v. Brand, supra;* § 38–22–127(5), C.R.S.1973. It is precisely this requirement, necessitating proof of all the elements of theft for conviction, which prevents the lien statute from violating the constitutional prohibition

against imprisonment for debt. *People v. Piskula*, 197 Colo. 148, 595 P.2d 219 (1979).

■■■ This prosecution was based solely on the theft statute. It was therefore unnecessary for the prosecution to prove any of the elements of the lien statute. The information referred to the offense of theft only, and cited the theft statute, to the exclusion of any other pertinent statutory provision. All the prosecution's evidence and argument at trial went directly to its theory of the case, that the defendant fully intended to retain all the customers' monies over their protests, and to avoid performance on the contracts. The prosecution's case-in-chief had no reference to any laborers or materialmen. Thus, defendant's lengthy argument, that the People did not prove the type of conduct prohibited by the lien statute, fails to address the gravamen of the offense which was charged and upon which defendant was convicted. There was sufficient evidence for the jury to find defendant guilty of theft, and, thus, defendant's argument as to this issue must fail.

### B.

Because we find that the lien statute was not a basis for prosecution, defendant's constitutional argument, that he was prosecuted under the lien statute for civil debt, must also fail. *See People v. Piskula, supra.*

### C.

■■ Defendant asserts that the trial court erred in giving a jury instruction quoting in large part from the lien statute. He contends that this instruction was not relevant to any material issue and was unsupported by any evidence. We disagree.

The instruction read as follows:

"The law requires that funds disbursed to a contractor under a building, construction or remodeling contract be held in trust for the payment of subcontractors, material suppliers, or laborers who have furnished materials, services or labor, or who have a lien or may have a lien against the property."

"A contractor is not required to deposit such funds from a single project into a separate bank account solely for that project, so long as these funds are not expended as prohibited above."

The prosecutor correctly argued this instruction went to the issue of defendant's intent. Defendant's theory of the case was that he was an honest businessman and that the transactions forming the basis of the charges were civil, not criminal, in nature. In support of this theory, defendant presented testimony by two witnesses who suggested that third parties such as laborers and subcontractors may have been involved in the failure to begin work on the five contracts in question. The obvious implication was that defendant intended to perform but was impeded by the uncooperativeness of others.

The instruction in question was offered in order to rebut defendant's theory of innocent intent. The prosecutor argued vigorously that, if in fact there had been any third parties involved and if defendant had had non-criminal intent as to the monies entrusted to him, then he would have held the monies as required by law. We note that the trial court stated that, but for the testimony of defendant's own witnesses, it would not have given the instruction.

The instruction was properly admitted. It stated the law correctly, provided a necessary link in the prosecution's rebuttal of the main theory of defense, and was supported by evidence in the record. *Houser v. Eckhardt*, 168 Colo. 226, 450 P.2d 664 (1969); *Converse v. Zinke*, 635 P.2d 882 (Colo.1981).

### II.

Defendant also contends the trial court erred in admitting the complete records of the bank account into which defendant deposited the checks given him by the five victims. Defendant argues that part of these records were unrelated to the five transactions in issue, that they suggested unrelated criminal activity, that they were

unduly prejudicial to him, and that, therefore, they were inadmissible under *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959); *People v. Honey*, 198 Colo. 64, 596 P.2d 751 (1979); and CRE 404(b). He does not assert any error in the procedure surrounding the admission of the evidence nor does he contest the language of the limiting instruction given by the court.

Defendant had offered to stipulate to all bank account records during the period in which the five transactions took place, October and November, but objected to admission of any records from December. The trial court admitted the complete record of the account, however, including several checks defendant had written during December which had been returned for insufficient funds. It is the admission of the December records, especially the returned checks, which defendant contests as unduly prejudicial.

■ Evidence of similar acts or other offenses is inadmissible to show the propensity of an accused to commit the offense with which he or she is charged. Such evidence is admissible, however, where it is offered for a valid purpose, such as to show motive, intent, plan, design, scheme, or a continuing transaction, where it is relevant to a material issue in the case, and where its probative value outweighs its prejudicial effect. *People v. Honey, supra; Stull v. People, supra;* CRE 404(b).

■ The additional increment of December's records completed the brief 3-month history of defendant's bank account and, therefore, aided the jury's understanding of the way in which defendant treated the victims' payments. Any prejudicial effect of the insufficient funds checks was outweighed by the probative value of having the complete record of defendant's account. The December records, introduced for the valid purpose of illuminating defendant's real intentions, were admissible under the broad exception defined by *People v. Honey* and *Stull v. People, supra.*

## III.

Defendant also contends that the trial court erred in instructing the jury that an attempt to repay does not negate the commission of a theft. Defendant maintains that there was no evidence of any attempt to repay and that such instruction, being unsupported by evidence, was inadmissible under *Rumley v. People*, 149 Colo. 132, 368 P.2d 197 (1962). We disagree that evidence on this issue was lacking.

The defense offered and the trial court admitted, over the People's objection, a letter defendant had written offering a partial repayment to one of the complaining witnesses. The letter was offered to prove that the defendant lacked the criminal intent to deprive the victims permanently of their deposited funds. This letter constituted an attempt to repay the monies alleged to have been stolen.

■ An attempt to return property does not negate the theft element of intent. *Kelley v. People*, 166 Colo. 322, 443 P.2d 734 (1968); *Hopkins v. People*, 89 Colo. 296, 1 P.2d 937 (1931). Indeed, even an actual return of property is not a negation, since the issue of intent involves not whether there was a permanent deprivation, but whether there was an intent to deprive permanently at the time of the taking. *People v. Burke*, 37 Colo.App. 289, 549 P.2d 419 (1976); *Hucal v. People*, 176 Colo. 529, 493 P.2d 23 (1971). Thus, the instruction was properly given.

## IV.

Defendant contends there was plain error in the trial court's instruction on the elements of theft. Defendant maintains that the instruction incorrectly made the culpable mental state of "knowingly" inapplicable to the element of "without authorization." The instruction read as follows:

"The elements of theft are therefore:
(1) Knowingly
·(a) obtaining or exercising control over,
(b) anything of value of another,
(c) which is the property of another,

(2) Without authorization, and

(3) Knowingly uses the thing of value in such a manner as to deprive the other person permanently of its use or benefit.

(4) The value of the thing involved is Ten Thousand Dollars ($10,000) or more."

 The basic requirement for instructions is that, read and considered in their entirety, they must clearly instruct the jury. *People v. Manier*, 184 Colo. 44, 518 P.2d 811 (1974). An instruction on the elements of an offense containing no reference to a culpable mental state may be cured by the inclusion of a separate joint operation instruction. *People v. Mattas*, 645 P.2d 254 (Colo.1982). *See also People v. Cisneros*, 665 P.2d 145 (Colo.App.1983).

Here, an instruction on joint operation, which thoroughly described the meaning and operation of the *mens rea* requirement, was given. Therefore, while the better practice might have been to include the *mens rea* requirement for all elements, a special instruction on "knowingly" as applied to "without authorization" was not required. *People v. Gresham*, 647 P.2d 243 (Colo.App.1982).

## V.

Finally, defendant contends error in the consolidation into one count of the losses suffered by all five victims, thereby making it possible for the offense of theft over $10,000 to be charged. We disagree.

Section 18–4–401(4) is based on 1967 Cum.Supp., C.R.S.1963, 40–5–2, which provided for a "theft twice or more within a period of six months *and from the same person.*" When that statute was repealed and reenacted as 1971 Cum.Supp., C.R.S. 1963, § 40–4–401(4), and then carried forward as § 18–4–401(4), C.R.S.1973, (1978 Repl.Vol. 8), the phrase "and from the same person" was deleted. We will not read it back in. As presently worded, the statutory language is plain and permits charging a defendant as occurred here.

*People v. Stratton*, 677 P.2d 373 (Colo.App. 1983).

The judgment of conviction is affirmed.

PIERCE and BERMAN, JJ., concur.