[Nos. H001703, H002270. Sixth Dist. July 1, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
DALE RANDALL GOEBEL, Defendant and Appellant.

[No. H002343. Sixth Dist. July 1, 1987]

In re DALE RANDALL GOEBEL on Habeas Corpus.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to rules 976 (b) and 976.1 of the California Rules of Court, paragraph one of the opinion and part VI, "Supremacy Clause," are certified for publication and the remainder of this opinion is not certified for publication.

**COUNSEL**

John P. Hannon II, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Ronald E. Niver and Morris Beatûs, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CAPACCIOLI, J.**—Defendant Dale Randall Goebel was convicted, following a court trial, of two counts of violating Penal Code section 484b (failure to apply and diversion of construction funds) in connection with two construction projects.[1] Section 484b states: "Any person who receives money for the purpose of obtaining or paying for services, labor, materials or equipment and willfully fails to apply such money for such purpose by

---

[1] All further statutory references are to the Penal Code unless otherwise specified. Count I of the information which charged grand theft (§ 487, subd. 1) was dismissed in exchange for the defendant's waiver of his right to a jury trial. Count II charged in statutory language a violation of section 484b occurring between approximately September 7, 1984, and October 5, 1984, involving an amount in excess of $1,000 and evidently corresponds to the funds received for construction of a single family dwelling on Lottie Street in Monterey County. The factual allegation in count I that defendant took property worth $15,000 was deemed to be part of count II. Count III charged in statutory language a violation of section 484b occurring between approximately July 9, 1984, and October 5, 1984, involving an amount in excess of $1,000 and evidently corresponds to the funds received for construction of a single family dwelling on Lobos Street in Monterey County.

either willfully failing to complete the improvements for which funds were provided or willfully failing to pay for services, labor, materials or equipment provided incident to such construction, and wrongfully diverts the funds to a use other than that for which the funds were received, shall be guilty of a public offense and shall be punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in the county jail not exceeding one year, or by both such fine and such imprisonment if the amount diverted is in excess of one thousand dollars ($1,000). If the amount diverted is less than one thousand dollars ($1,000), the person shall be guilty of a misdemeanor."

. . . . . . . . . . . . . . . . . . . .*

## VI

### Supremacy Clause

Defendant contends that this criminal prosecution must be dismissed because section 484b, as applied to a bankruptcy debtor who has received a discharge such as he, conflicts with the Bankruptcy Code (11 U.S.C.) and, therefore, violates the supremacy clause of the United States Constitution.[6] Specifically, defendant asserts that section 484b conflicts with the exemption provisions of section 522 of the Bankruptcy Code, the preference provisions of section 547 of that code, and the "fresh start" policy basic to a discharge under chapter 7 of that code.

Deciding whether a state statute conflicts with federal law and is consequently invalid under the supremacy clause is essentially a two-step process. (*Perez* v. *Campbell* (1971) 402 U.S. 637, 644 [29 L.Ed.2d 233, 239, 91 S.Ct. 1704].) We must first ascertain the construction of the state and federal statutes and then determine the constitutional question whether they are in conflict. (*Ibid.*) A state statute impermissibly conflicts with federal law if it stands as an obstacle to the accomplishment and execution of the full congressional purposes and objectives of the federal enactment. (*Id.* at p. 649 [29 L.Ed.2d at p. 242].) It does not matter whether the state Legislature intended to hinder federal law. (*Id.* at pp. 651-652 [29 L.Ed.2d

---

*See footnote, *ante,* page 418.

[6] Article VI of the United States Constitution provides in pertinent part: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

at pp. 243-244]; see *Grimes* v. *Hoschler* (1974) 12 Cal.3d 305, 308-313 [115 Cal.Rptr. 625, 525 P.2d 65].)]

Chapter 7 of the Bankruptcy Code provides a type of bankruptcy relief which involves the collection, liquidation, and distribution of an individual debtor's property and the discharge of his debts.[7] (11 U.S.C. § 701 et seq.) Commencement of a voluntary bankruptcy case creates an estate comprised of ". . . all legal or equitable interests of the debtor in property as of the commencement of the case" with exceptions not relevant here and other specified interests. (11 U.S.C. § 541(a)(1).) The debtor is under a duty to surrender all property of the estate to the bankruptcy trustee. (11 U.S.C. § 521(4).) It is the trustee's duty in a chapter 7 case to administer the bankruptcy estate, collect the estate's property, and reduce that property to money. (11 U.S.C. § 704.)

A discharge under chapter 7 relieves the debtor of all legal responsibility for the discharged debts. (11 U.S.C. §§ 524, 727.) Unless an exception regarding a particular debt is established, a discharge under section 727 ". . . discharges the debtor from all debts that arose before the date of the order for relief . . . and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case . . . ."[8] (11 U.S.C. § 727(b); see 11 U.S.C. § 523.)

One of the primary purposes of the Bankruptcy Code, which is continued from the former Bankruptcy Act, is to give the honest individual debtor a fresh start unhampered by the pressure and discouragement of preexisting debt. (See Sen. Rep. No. 95-989, 2d Sess., pp. 6-7, 98 [1978 U.S. Code Cong. & Admin. News, pp. 5792-5793, 5884]; H.R.Rep. No. 95-595, 2d Sess., pp. 125-126, 128, 175-176, 384 [1978 U.S. Code Cong. & Admin. News, pp. 6086-6087, 6089, 6136-6137, 6340]; *Perez* v. *Campbell, supra,* 402 U.S. at pp. 648, 660 [29 L.Ed.2d at pp. 241-242, 248-249]; *Local Loan Co.* v. *Hunt* (1934) 292 U.S. 234, 244 [78 L.Ed. 1230, 1235, 54 S.Ct. 695, 93 A.L.R. 195]; *Williams* v. *United States Fidelity & Guaranty Co.* (1915) 236 U.S. 549, 554-555 [59 L.Ed. 713, 716-717, 35 S.Ct. 289]; 11 U.S.C. §§ 522, 524, 727.) A second major purpose of the Bankruptcy Code, which is also

---

[7] A "debt" is defined as ". . . liability on a claim.," (11 U.S.C. § 101(11).) A "claim" is defined as either the ". . . right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured" or the ". . . right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." (11 U.S.C. § 101(4).)

[8] Filing a petition under chapter 7 with the bankruptcy court by a debtor commences a voluntary liquidation case and such commencement constitutes an order for relief. (11 U.S.C. § 301.) Section 502 of United States Code, title 11, governs the allowance of claims.

carried forward from earlier law, is the equitable distribution of the debtor's assets among creditors. (See H.R.Rep. No. 95-595, 2d Sess., pp.177-178, 186 [1978 U.S. Code Cong. & Admin. News, pp. 6138-6139, 6147]; *Kuehner* v. *Irving Trust Co.* (1937) 299 U.S. 445, 451-452 [81 L.Ed. 340, 345-346, 57 S.Ct. 298]; *Louisville Bank* v. *Radford* (1934) 295 U.S. 555, 587-588 [79 L.Ed. 1593, 1603-1604, 55 S.Ct. 854, 97 A.L.R. 1106]; *Palmer* v. *Radio Corporation of America* (5th Cir. 1971) 453 F.2d 1133, 1140-1141.)

To facilitate a "fresh start," a debtor is entitled to exempt specified property from the estate. (See 11 U.S.C. § 522; H.R.Rep. No. 95-595, 2d Sess., p. 126 [1978 U.S. Code Cong. & Admin. News, p. 6087].) At the time defendant filed for bankruptcy under chapter 7, it was possible for a debtor to exempt from the estate $7,900 worth of any property under certain circumstances. (See 11 U.S.C. former § 522(d)(l) and (d)(5), Pub.L. No. 95-598, 92 Stat. 2549.)[9] To achieve equitable distribution, a trustee may set aside specified prepetition preferential tranfers of property which would, if not set aside, enable a creditor to receive more than he would have otherwise under the Bankruptcy Code. (11 U.S.C. §§ 547, 550; H.R.Rep. No. 95-595, 2d Sess., p. 177-178 [1978 U.S. Code Cong. & Admin. News, pp. 6138-6139]; see 11 U.S.C. 101(48).) The trustee may generally recover the property or its value for the benefit of the estate. (11 U.S.C. § 550.) Other provisions empower the trustee to recover property for benefit of the estate on other grounds. (See 11 U.S.C. §§ 510(c)(2), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553, 724.) The property of the estate is distributed in payment of claims according to established rules of distribution. (11 U.S.C. § 726.)

■ Defendant argues that section 484b as applied to a bankruptcy debtor (1) precludes him from exercising his right to claim an exemption of construction money received for the purpose of obtaining or paying for services, labor, materials or equipment and (2) may force him to make improper preferential transfers in contravention of the policy against creditor favoritism underlying section 547 of that code. We disagree.

■ Section 484b does not make failure to apply money received criminal unless such failure is coupled with wrongful diversion. (See *People* v. *Butcher* [*supra*] (1986) 185 Cal.App.3d 929, 939-940 [229 Cal.Rptr. 910]; but cf. *People* v. *Worrell* (1980) 107 Cal.App.3d 50, 55-56 [165 Cal.Rptr. 459].) Thus, receipt of money provided for the purpose of obtaining or paying for services, labor, materials or equipment is not enough to violate

---

[9] Defendant's bankruptcy attorney testified that he had defendant file a bankruptcy petition on October 5, 1984, to avoid impending adverse changes in the exemption section. (See 11 U.S.C. § 522(d)(5), Pub.L. No. 98-353.)

the law and "[t]he crime is not complete until there is a use of funds for another purpose, if ever." (*People* v. *Worrell, supra,* 107 Cal.App.3d at p. 56.)

 Mindful of the cardinal rule of statutory construction requiring courts to interpret ambiguous statutes to avoid constitutional invalidity (*Carlos* v. *Superior Court* (1983) 35 Cal.3d 131, 147-148 [197 Cal.Rptr. 79, 672 P.2d 862]), we conclude that a debtor has not wrongfully diverted money received within the meaning of section 484b if that debtor simply surrenders that money to a trustee as part of the estate or properly exempts that money from the estate. However, the crime is a fait accompli where, for example, a debtor willfully fails to apply construction funds and instead spends it on ". . . a use other than that for which the funds were received" and the funds are later recovered for the benefit of the estate.[10]

██ Under this construction, section 484b does not force a debtor to forgo a proper exemption of the money or make preferential transfers to avoid criminal penalty.

██ Defendant also challenges section 484b on the ground that it is antithetical to the "fresh start" concept. We perceive no conflict. Nothing in the Bankruptcy Code indicates that a discharge was intended to insulate a debtor from the consequences of his prepetition criminal behavior.

The recent United States Supreme Court opinion of *Kelly* v. *Robinson* (1986) 479 U.S. 36 [93 L.Ed.2d 216, 107 S.Ct. 353] is instructive. In that case, the court faced the different, but relevant, question whether a criminal restitution order entered as a condition of probation prior to the filing of a bankruptcy petition was a dischargeable debt. The court determined such order could not be discharged. (*Id.* at p. 53 [93 L.Ed.2d at pp. 230-231, 107 S.Ct. at pp. 362-363]; see also *People* v. *Calhoun* (1983) 145 Cal.App.3d 568, 570-572 [193 Cal.Rptr. 394]; *People* v. *Washburn* (1979) 97 Cal.App.3d 621, 622-626 [158 Cal.Rptr. 822].)

The focus of the court's inquiry was section 523(a)(7) of the Bankruptcy Code, which protects from discharge any debt ". . . to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . . ." (*Kelly* v. *Robinson, supra,* 479 U.S. at pp. 50-53 [93 L.Ed.2d at pp. 229-231, 107 S.Ct. at pp. 361-363].) The section was examined in light of historical application of the prior Bankruptcy Act and the interests of the states. (*Ibid.*)

---

[10] However, we need not decide here whether conversion of construction funds into an exempt asset *on the eve of* filing a bankruptcy petition constitutes a diversion within the meaning of section 484b.

The Supreme Court noted: "Congress enacted the Code in 1978 against the background of an established judicial exception to discharge for criminal sentences, including restitution orders, an exception created in the face of a statute drafted with considerable care and specificity." (*Id.* at p. 46 [93 L.Ed.2d at p. 227, 107 S.Ct. at p. 359].) The court found ". . . the States' interest in administering their criminal justice systems free from federal interference . . ." a critical consideration. (*Id.* at p. 49 [93 L.Ed.2d at p. 228, 107 S.Ct. at p. 361].) It recognized that "[t]he right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States" and in its view the Congress would not ". . . lightly . . . limit the rehabilitative and deterrent options available to state criminal judges." (*Id.* at pp. 47, 49 [93 L.Ed.2d at pp. 227-228, 107 S.Ct. at pp. 360-361].)

With this in mind, the Supreme Court determined that neither of the qualifying phrases of section 523(a)(7), permitted the discharge of criminal restitution orders because such orders ". . . operate 'for the benefit' of the State" and ". . . are not assessed 'for . . . compensation' of the victim." (*Id.* at p. 53 [93 L.Ed.2d at pp. 230-231, 107 S.Ct. at pp. 362-363].) It reasoned: "The criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole. Thus, it is concerned not only with punishing the offender, but also with rehabilitating him. Although restitution does resemble a judgment 'for the benefit of' the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant. . . . 'Unlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose.' [Citation.]" (*Id.* at p. 52 [93 L.Ed.2d at p. 230, 107 S.Ct. at p. 362]; see also *In re Brian S.* (1982) 130 Cal.App.3d 523, 529 [181 Cal.Rptr. 778]; *People* v. *Richards* (1976) 17 Cal.3d 614, 620-622 [131 Cal.Rptr. 537, 552 P.2d 97].) The court further noted: "Restitution is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harms his actions have caused. Such penalty will affect the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused. Similarly, the direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine. [Citation.]" (*Kelly* v. *Robinson, supra,* 479 U.S. at p. 49, fn. 10 [93 L.Ed.2d at p. 228, 107 S.Ct. at pp. 360-361, fn. 10]; see also *People* v. *Richards, supra,* 17 Cal.3d at p. 622.)

Under like reasoning, we perceive no conflict between the "fresh start" policy and a postdischarge order of a California court requiring a defendant, as a condition of probation in a criminal case, to pay restitution to the victim for losses resulting from his prepetition offense even where the losses could also be characterized as damages resulting from a tortious or contractual breach which may have been the basis of a bankruptcy claim. As recognized by the United States Supreme Court and California courts, criminal responsibility for wrongdoing is not the same as civil liability. Since a debtor would not be relieved by discharge from an order of restitution imposed prior thereto, there is no rationale for concluding that a discharge or "fresh start" policy would bar subsequent imposition of such order. (Cf. 11 U.S.C. § 524 [effect of discharge].)

## VII*

. . . . . . . . . . . . . . . . . . . .

The judgment and the August 8, 1986, order are affirmed.

Agliano, P. J., and Brauer, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 14, 1987.

---

*See footnote, *ante,* page 418.